*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 09a0186p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

JAMES GRAWEY, DAWN WENTWORTH,
                    *Plaintiffs-Appellees,*

              *v.*

T. DRURY, City of Clare Police Lieutenant, et al.,
                    *Defendants,*

BRAD DAVIS, Clare County Deputy in his individual capacity,
              *Defendant-Appellant (07-2584),*

DAVID SAAD, City of Clare Police Officer,
              *Defendant-Appellant (08-1064).*

Nos. 07-2584; 08-1064

Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.
No. 06-12078—Thomas L. Ludington, District Judge.

Argued: March 11, 2009

Decided and Filed: May 28, 2009

Before: KETHLEDGE and WHITE, Circuit Judges; POLSTER, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Marcia L. Howe, JOHNSON, ROSATI, LaBARGE, ASELTYNE & FIELD, P.C., Farmington Hills, Michigan, Mary Massaron Ross, PLUNKETT COONEY, Detroit, Michigan, for Appellants. Dean Elliott, DEAN ELLIOTT, PLC, Royal Oak, Michigan, for Appellees. **ON BRIEF:** Marcia L. Howe, JOHNSON, ROSATI, LaBARGE, ASELTYNE & FIELD, P.C., Farmington Hills, Michigan, Mary Massaron Ross, PLUNKETT COONEY, Detroit, Michigan, for Appellants. Dean Elliott, DEAN ELLIOTT, PLC, Royal Oak, Michigan, James B. Rasor, THE RASOR LAW FIRM, PLLC, Royal Oak, Michigan, for Appellees.

_____

[*] The Honorable Dan Aaron Polster, United States District Judge for the Northern District of Ohio, sitting by designation.

1

————————————

**OPINION**

————————————

DAN AARON POLSTER, District Judge. Appellants David Saad and Brad Davis appeal the District Court's denial of their motions for summary judgment on qualified immunity grounds. The District Court denied summary judgment because there were triable issues of material fact. Viewing the facts in the light most favorable to the Appellees, Appellants used excessive force in violation of the Fourth Amendment when arresting Appellee. We therefore affirm.

## I. FACTS

On June 16, 2005 Appellee-Plaintiff James Grawey of Detroit, Michigan, visited Clare, Michigan to attend a family graduation celebration. That evening, Grawey, his sister Dawn Wentworth, his niece Sara Grawey, and his friend Michelle Burtch, went to the Peppermint Lounge, a karaoke bar at a local bowling alley, where Grawey consumed several drinks.

While sitting at a table with his companions, Grawey was approached by Seneca Booth.[1] Taking exception to an earlier interaction between Grawey and Booth's girlfriend, Booth leaned over to Grawey and asked "[w]hy did you touch my woman?" Not hearing Booth properly, Grawey responded "[y]ou know you like it," and turned away from Booth. Angered, Booth smashed Grawey's head against the table. Grawey was knocked to the ground but got up under his own power. Grawey and Booth then began fighting before being separated.

The two men were ejected from the bar. Police arrived on the scene shortly thereafter. According to Grawey, who recalled "snap shots" of the immediate aftermath of the fight, he saw two police officers and approached them to inform them that he had just been attacked. One of the officers was Appellant-Defendant David Saad. Saad

_____

[1] Booth was named as a defendant in Grawey's complaint. Grawey was awarded default judgment when Booth did not appear.

asked Grawey to explain what had happened. As Grawey attempted to describe the altercation, he repeatedly reached for his injured head. Each time Grawey reached for his head, Saad interrupted him and told him to put his hands down. This agitated Grawey, who started to walk away from Saad.

As Grawey walked away, Saad discharged his pepper spray at him. Grawey did not recall Saad ever telling him to stop walking. Dawn Wentworth, Plaintiff's sister, and Michelle Burtch, his friend, both testified that Saad never informed Grawey he was under arrest.

Upon the pepper spray being discharged, Grawey ran toward his mother's house, and Saad chased after him. After crossing a street, Grawey stopped running, put his hands against a building, and waited for Saad. According to Grawey, once Saad caught up to him, he "put his hand in [Grawey's] face with pepper spray." Officer Shawn Davis,[2] who was assisting Saad on the scene, did not believe that Grawey was "actively" resisting arrest or that he was attempting to escape or flee. Shawn Davis testified that "[Grawey] was just up against the wall." Shawn Davis also did not remember Saad giving Grawey any commands while Grawey was against the wall.

According to Grawey, he held his breath when Saad began discharging the pepper spray. Saad told Grawey that "you have to breathe sometime." When Grawey finally inhaled, Saad told him "there you go" or "take a good deep breath." Saad continued to spray Grawey from close range. Grawey felt an intense burning before collapsing to the sidewalk, unconscious.

According to Saad,[3] when he arrived at the bowling alley parking lot in his police car, Grawey was "flailing [his arms] all around" while his niece was trying to calm him down. Saad ordered Grawey to come towards the car but Grawey ignored the command.

---

[2]There were two officers named Davis involved in the incident, Shawn and Brad. Both were named as defendants in Plaintiff's complaint, but Shawn Davis was dismissed pursuant to a voluntary stipulation. This appeal only involves Officer Brad Davis. Any references to "Defendant Davis" or "Davis" refer to Appellant, Brad Davis.

[3]As discussed *infra*, the Court must view the facts in the light most favorable to Grawey. Defendant Saad's disputed facts are referenced because they are central to his argument on appeal.

Saad then got out of his car and again ordered Grawey and his niece to come towards him. Saad attempted to speak with Grawey but he "was cussing, swearing . . . causing a huge scene" and still "[f]lailing his arms around." Upon twice being asked by Saad to explain what happened, Grawey cursed at Saad. Saad then told Grawey to turn around and place his hands behind his back because he was under arrest. Grawey did not turn around despite Saad's command. Grawey then ran behind a car. Saad ran toward the other side of the car and discharged his pepper spray. Grawey, who had been "lightly" hit by the pepper spray, ran away from Saad, eventually stopping in front of a building. Saad estimated he was approximately 150 feet away from the building when Grawey stopped. As Saad approached, Grawey placed his arms against the side of the building. Shawn Davis testified that Grawey's muscles were flexed and rigid. Saad told Grawey to place his arms behind his back and, along with Shawn Davis, converged on Plaintiff. Grawey did not move his arms from the building. The officers attempted to force Grawey's arms behind his back but Grawey resisted by clenching his muscles. Saad then used his pepper spray on Grawey for a few seconds. Grawey's muscles relaxed enough for Saad to be able to put Grawey's hands behind his back. Saad helped Grawey to the ground and placed him in handcuffs.

Based on Grawey's version of the facts, as he lay on the ground unconscious, other Clare County police officers, including Appellant-Defendant Brad Davis, arrived and began assisting Saad and Shawn Davis. Also arriving on the scene was Mary Grawey, Plaintiff's mother, who had been called by Sara Grawey. Mary attempted to help her son but an officer grabbed her and told her to stop. Sara opined that "[t]hey did this because he was gay." Mary told Sara to retrieve a camera from the car. The officer who had grabbed Mary asked her if her son was gay. After indicating that he was, Mary heard Defendant Saad say "[s]o you are a faggot."

With Grawey lying on his back, the police then turned him over in order to handcuff him. Mary Grawey, who photographed Defendant Davis holding Grawey's legs and feet while he was on his back, testified that Davis "grabbed his [left] leg and twisted his leg over instead of rolling him over . . . like he was using leverage to get him

to flip over." Grawey was now face-down. Michelle Burtch observed Grawey's leg being bent back almost to his shoulder.[4] The officers then handcuffed Grawey, carried him to the police car, and transported him to a nearby hospital, where Grawey was diagnosed with a broken left ankle.

Grawey brought a complaint against Saad, Davis, Kyle Kehn, Shawn Davis, and Thomas Drury,[5] the officers involved in the incident. Count I of the complaint alleged arrest, detention, and prosecution without probable cause and excessive use of force. Count II alleged that the officers failed to intervene to stop the excessive use of force. Count III was a dram shop action against the Peppermint Lounge. Count IV of the complaint alleged assault and battery against the officers.

Defendants Kehn, Saad and Davis moved for summary judgment on qualified immunity grounds. The District Court granted Kehn's unopposed motion, dismissing him from the case. Grawey did not oppose Saad's or Davis' motion with respect to the Count I arrest, detention, and prosecution theory of the claim nor the Count II failure to intervene claim. He also did not oppose Defendant Davis' motion for summary judgment as to the assault portion of Count IV. Consequently, the District Court granted these portions of the motion.

Grawey opposed Defendant Saad's and Defendant Davis' motion for summary judgment on the excessive force claims against both defendants, the battery claim in Count IV against both defendants, and the assault claim against Defendant Saad.

The District Court denied all opposed portions of Saad's and Davis' motions for summary judgment, holding that Grawey's and eyewitnesses' depositions created triable issues of material fact on all of the claims. With respect to Defendant Saad, the District Court found three critical triable issues of fact. First, whether Saad told Grawey not to

---

[4]While Grawey references the bending of his leg back, his briefing does not use this act as part of the basis for his excessive force claim. In its opinion, the District Court suggests that Davis bent the leg back. However, the record is unclear as to who bent Grawey's leg back, which may explain why Grawey does not attempt to use this act as part of his excessive force claim against Davis.

[5]Drury was dismissed together with Shawn Davis, pursuant to a voluntary stipulation.

walk away and informed him that he was under arrest. Second, whether Saad immediately pepper sprayed Grawey after Grawey stopped running or whether Saad pepper sprayed Grawey only after Grawey resisted arrest by tensing his body. Third, whether Saad used an unreasonable amount of pepper spray on Grawey.

The triable issues of fact concerning Defendant Davis involved the officer's actions once Grawey was unconscious; specifically, whether Davis was objectively reasonable in his handling of the unconscious Grawey's legs and feet in turning him over to place handcuffs on him.

Defendants Saad and Davis appeal the District Court's denial of summary judgment on qualified immunity grounds, arguing that they are entitled to summary judgment as a matter of law.

## II. ANALYSIS

### A. *Qualified Immunity*

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

In assessing qualified immunity, the court, viewing the facts in the light most favorable to the plaintiff, determines whether: 1) the violation of a constitutional right has occurred; and 2) the constitutional right at issue "was clearly established at the time of defendant's alleged misconduct." *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Dunigan v. Noble*, 390 F.3d 486, 491 (6th Cir. 2004).

Some panels of the Sixth Circuit have employed a third step requiring the court to determine whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional right. *See e.g., Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003); *Sample*

*v. Bailey,* 409 F.3d 689, 696 (6th Cir. 2005). In excessive force cases, however, because the defendant's conduct must have been objectively unreasonable to find a constitutional violation, *Graham v. Connor*, 409 U.S. 386, 395 (1989), the third step is redundant. Thus, qualified immunity in excessive force cases is a two-step analysis.

As a threshold matter, the plaintiff must allege in the complaint facts stating a claim of excessive force. This is not a separate step in the summary judgment analysis because without it the case likely would have been dismissed under Federal Rule of Civil Procedure 12(b)(6) and not have proceeded beyond the pleading stage. If the complaint sufficiently sets forth allegations making out a claim of excessive force, then the plaintiff has the burden of producing facts during the discovery process supporting these allegations. This will generally be accomplished through plaintiff's own testimony, the testimony of defendants, and witness testimony.

In step one of the qualified immunity analysis, the court determines whether this evidence produced by plaintiff, taken in the light most favorable to plaintiff but viewed from the perspective of a reasonable officer on the scene, establishes a claim of excessive force in violation of the Constitution. The force must be objectively unreasonable such that it could not have been based on a reasonable mistake of law. *See Sample*, 409 F.3d at 696 n.3 (6th Cir. 2005). If plaintiff's evidence does not establish an excessive force violation, summary judgment is granted in favor of defendants. If plaintiff satisfies step one of the analysis, plaintiff must still demonstrate step two – that the constitutional right violated was clearly established at the time of the incident.

While excessive force qualified immunity claims should proceed under a two-step rather than a three-step analysis, we note that the Supreme Court, in *Pearson v. Callahan*, 128 S.Ct. 808, 818 (2009), recently granted lower courts the discretion to conduct their two-step analysis in the manner most appropriate to the case before them. We will apply the traditional analysis, examining first whether Grawey has presented evidence of an excessive force constitutional violation and then whether the constitutional right violated was clearly established at the time of the incident.

Before beginning the qualified immunity analysis, we consider Grawey's motion to dismiss Defendant Davis' appeal for lack of jurisdiction.[6] Grawey contends that Davis' appeal does not concede Grawey's version of the facts and therefore raises triable issues of fact over which we do not have jurisdiction.

This Court has jurisdiction over final orders and appealable interlocutory orders under 28 U.S.C. §§ 1291-92. Denials of summary judgment generally do not fall into either category. *Floyd v. City of Detroit*, 518 F.3d 398, 404 (6th Cir. 2008). An exception exists for denials of summary judgment motions based on qualified immunity to the extent that the appeal raises issues of law. *Id.*; *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). If issues of law are raised, we review the District Court's decision on the summary judgment motion *de novo*. *Dickerson v. McClellan*, 101 F.3d 1151 (6th Cir. 1996). The Court's *de novo* review must be based on the facts viewed in the light most favorable to the plaintiff. This means that if the facts are disputed, as they often are, the court must presume the plaintiff's version of the facts. If the appeal solely disputes triable issues of fact, without raising issues of law, we do not have jurisdiction. *Johnson v. Jones*, 515 U.S. 304, 319-20 (1995).

We have jurisdiction over Davis' appeal because it raises issues of law for us to determine. Specifically, the appeal raises the legal issues of whether the facts, viewed in the light most favorable to Grawey, present a constitutional violation, and if so, whether the constitutional violation was clearly established. Further, we reject Grawey's motion to dismiss because, for purposes of the appeal, Davis has generally conceded Grawey's version of the facts.

*1. Constitutional Violation*

The first inquiry in our qualified immunity analysis is whether a constitutional violation has occurred. *Dunn v. Matatall*, 549 F.3d 348, 353 (6th Cir. 2008). The alleged violations in these cases are excessive force by Defendant Saad in his use of pepper spray on Grawey and by Defendant Davis in allegedly twisting the unconscious

---

[6] Grawey has not moved to dismiss Defendant Saad's appeal for lack of jurisdiction.

Grawey's ankle while securing him to be handcuffed. In determining whether an excessive force constitutional violation occurred, we must look at the objective reasonableness of the defendant's conduct, "which depends on the facts and circumstances of each case viewed from the perspective of a reasonable officer on the scene and not with 20/20 hindsight." *Id*. (quoting *Fox v. DeSoto*, 489 F.3d 227, 236 (6th Cir. 2007)). Among the most important factors to consider in determining the objective reasonableness of the force used are: 1) the severity of the crime at issue; 2) whether the suspect posed an immediate threat to the safety of the police officer or others; and 3) whether the suspect actively resisted arrest or attempted to evade arrest by flight. *Graham*, 490 U.S. at 396; *Smoak v. Hall,* 460 F.3d 768, 783 (6th Cir. 2006); *Livermore v. Lubelan*, 476 F.3d 397, 404 (6th Cir. 2007).

The District Court found a triable issue of fact that Saad committed a constitutional violation. It noted that the use of pepper spray on a handcuffed and hobbled person has been clearly established to be excessive force. *Champion v. Outlook Nashville*, 380 F.3d 893, 903 (6th Cir. 2004). Pepper spray is also excessive force when a detainee has surrendered, is secured, is not acting violently and does not pose a threat to officers or anyone else. *Cabaniss v. City of Riverside*, 231 F. App'x 407, 413 (6th Cir. 2007). Finally, the District Court observed that when detainees have been subdued such that they are not trying to flee and are not a threat to anyone, there is no need for force to be used. *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988), aff'd 909 F.2d 1483 (1990).

In light of the caselaw and the dispute over whether Grawey had been told he was under arrest, whether he was resisting arrest or had surrendered, and whether Saad used an unreasonable amount of pepper spray, the District Court found a triable issue of fact that a constitutional violation occurred.

With respect to Davis, the District Court held that because there was a triable issue that Defendant Davis' handling of Grawey's legs to secure him for arrest was objectively unreasonable, there was a triable issue of fact that Davis used excessive force in violation of the Fourth Amendment.

Viewed in the the light most favorable to Grawey, the evidence supports that Saad committed a constitutional violation. Grawey testified that he did not know that he was under arrest when he initially ran away from Saad.[7] He then stopped and placed his hands against the wall, a fact not disputed by Saad, as he waited for Saad to catch up to him. Grawey testified that Saad pepper sprayed him as soon as Saad reached him. According to Shawn Davis, Grawey was not "actively" resisting arrest at the time. *JA-199.* Thus, according to Grawey's version of the facts, Saad discharged his pepper spray while Grawey had his hands against the wall, after waiting for the officer to catch up to him, without any indication of resistance.

An officer has used excessive force when he pepper sprays a suspect who has not been told she is under arrest and is not resisting arrest. *See Atkins v. Township of Flint*, 94 F. App'x 342, 349 (6th Cir. 2004); *Adams v. Metiva*, 31 F.3d 375, 385 (6th Cir. 1994). The cases raised by Grawey – *Greene v. Barber*, 310 F.3d 889 (6th Cir. 2002), *Atkins,* and *Adams* – are persuasive. Though we held that the officer in *Greene* was entitled to qualified immunity, we noted that even when a suspect verbally and physically resists arrest, the use of pepper spray may constitute excessive force. We denied qualified immunity in *Atkins* and *Adams*, where pepper spray was used on plaintiffs who had not been told they were under arrest. *Adams*, in particular, offers a useful analogue to the current case because, similar to Grawey, the plaintiff there was not aware he was under arrest, had committed a relatively minor violation, and had walked away before being sprayed by mace.

Moreover, applying the three *Graham* factors – severity of the crime, immediate threat to officers or others, and actively resisting arrest or trying to flee – Saad's conduct was not objectively reasonable when the facts are viewed in a light most favorable to Grawey. Grawey's crime, disturbing the peace, was relatively minor. Grawey, who was unarmed, did not pose an immediate threat to the officers or to others when Saad sprayed him. And Grawey was not actively resisting arrest or trying to flee at the time he was

---

[7]Saad was the only witness who testified that he told Grawey he was under arrest. Grawey's sister, Dawn Wentworth, and friend, Michelle Burtch, both testified that Saad never told Grawey he was under arrest.

pepper sprayed by Saad. Rather, he had stopped running and placed his hands against the wall while he waited for the officer to arrive.

Saad's contentions, both in the briefing and the oral argument, must be rejected for qualified immunity analysis because they are premised on Saad's version of the facts. In particular, Saad relies heavily on his claims that Grawey was told he was under arrest before running away from Saad and that Saad pepper sprayed Grawey the second time only after Grawey refused to move his arms from the building to permit the officers to handcuff him. These material facts are disputed by Grawey and are therefore for a jury to decide at trial.

Even if we give Saad the benefit of the doubt and assume that his arguments are based on the facts viewed in the light most favorable to Grawey, they are without merit. The primary citations offered by Saad to support the conclusion that his pepper spraying of Grawey was reasonable involved pepper spraying individuals who were armed, had immediate access to arms, or presented an immediate danger to themselves or others, which was not the case with Grawey. *See Abdul-Khaliq v. City of Newark*, 275 F. App'x 517 (6th Cir. 2008) (pepper spray's purpose is to give police an effective non-lethal option to take custody of an armed suspect who refuses to be lawfully arrested or detained); *Ewolski v. City of Brunswick*, 287 F.3d 492, 508 (6th Cir. 2002) (expressing doubt "that the use of non-lethal force against an armed and volatile suspect constitutes excessive force"); *Monday v. Oullette*, 118 F.3d 1099 (6th Cir. 1997) (officers may use pepper spray to take custody of suspect presenting danger to himself); *Bing v. City of Whitehall*, 456 F.3d 555, 569-70 (6th Cir. 2006) (use of pepper spray found to be reasonable where dangerous suspect refuses to comply with police and has access to arms).

Furthermore, Saad does not even address Grawey's contention that the amount of pepper spray used, which allegedly caused Grawey to pass out, constituted excessive force. Even if Saad's use of pepper spray *per se* on Grawey was not excessive force, Saad's discharging enough pepper spray at a very close distance to cause Grawey to pass out supports a claim of excessive force.

Finally, Saad's citations for the proposition that he made a reasonable mistake of law are inapposite. In *Untalan v. City of Lorain*, 430 F.3d 312 (6th Cir. 2005), the officer who was found not to have used excessive force was faced with a schizophrenic individual who had a butcher knife, had just attacked another officer, and posed an immediate danger to himself, his father, and the police. Grawey had no weapon, had not attacked an officer, and did not pose a danger to anyone. In *Monday*, where the police pepper sprayed the plaintiff in order to take him to the hospital, the plaintiff presented a danger to himself, he told the officer he would have to spray him to subdue him, and only a single burst was used. Grawey did not present a danger to himself, did not tell the officer he would have to pepper spray him to get him to submit, nor was only a single burst used.

In *Greene*, discussed *supra*, where we granted qualified immunity, the plaintiff was actively resisting arrest and had no evidence to counter the officer's contention that he was verbally and physically resisting arrest. In contrast, testimony here supports Grawey's contention that he did not know he was under arrest, and that he was not resisting arrest. Moreover, viewing the facts in the light most favorable to Grawey, Saad, unlike the defendants in *Greene*, may not have even properly followed police department procedures. According to Clare City Police Department regulations, pepper spray may not be "[d]ischarged into the eyes or face at a distance of less than three feet" unless there is "an immediate threat of serious injury or death." *JA-239*. Based on Grawey's testimony, it could be inferred that Saad discharged pepper spray directly into Grawey's eyes from less than three feet. Additionally, the relevant situation justifying use of pepper spray is "[w]hen a subject is being arrested and cannot be controlled and circumstances dictate the use of a weapon to control the subject." *JA-238*. Based on Grawey's version of the facts, because Grawey was never told he was under arrest and had not done anything to manifest that he could not be controlled, Saad did not properly comply with departmental procedures. We must therefore reject Saad's contention that his actions were a reasonable mistake of law caused by his compliance with Clare City Police Department regulations.

Similarly, viewing the evidence in the light most favorable to Grawey, Davis also committed a constitutional violation. Grawey's mother testified that Davis "grab[bed] and twist[ed]" her unconscious son's foot and used the "leverage" from the twist to "flip" him over. Davis' technique was not an objectively reasonable method for moving an unconscious and limp-bodied person from his back to his front, for the sole purpose of handcuffing him. First, the unnecessary twisting of the leg of an unconscious and limp detainee with the amount of force sufficient to fracture the detainee's ankle, is an unreasonable use of force. A reasonable police officer in that situation would not have secured Grawey for arrest by grabbing and twisting his foot and using the leverage from the twist to flip him over.

Moreover, proximate cause and intent, challenged by Davis, can be inferred when we view the facts in the light most favorable to Grawey. Based on his mother's testimony, Grawey has presented enough evidence to infer that his ankle injury was proximately caused by Davis twisting his leg to turn him over. Additionally, viewed in the light most favorable to Grawey, there was the intentional conduct required for a Fourth Amendment claim. *Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1989). The evidence offered by Grawey is sufficient to infer that Davis intended to twist Grawey's ankle and foot to turn him over, even if he did not intend to break his ankle. Consequently, the District Court correctly concluded that there is a triable issue whether Davis' actions constituted a use of force that was objectively unreasonable and therefore excessive.

### 2. *Clearly Established Constitutional Right*

The next step of our qualified immunity analysis is whether the alleged violations involved a constitutional right that was clearly established at the time of the alleged misconduct. The key determination is whether a defendant moving for summary judgment on qualified immunity grounds was on notice that his alleged actions were unconstitutional. *Lyons v. City of Xenia*, 417 F.3d 565, 579 (6th Cir. 2005). "[A]n action's unlawfulness can be apparent from direct holdings, from specific examples described as prohibited, or from the general reasoning that a court employs." *Feathers*,

319 F.3d at 848. "In an obvious case, general standards can clearly establish the answer, even without a body of relevant case law." *Sample v. Bailey*, 409 F.3d 689, 699 (6th Cir. 2005) (quoting *Brousseau v. Haugen*, 543 U.S. 194, 199 (2004)). "[T]here need not be a case with the exact same fact pattern or even 'fundamentally similar' or 'materially similar' facts; rather, the question is whether the defendants had 'fair warning' that their actions were unconstitutional." *Cummings v. City of Akron*, 418 F.3d 676, 687 (6th Cir. 2005) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). Thus, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope*, 536 U.S. at 741. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.

The District Court held that Grawey's constitutional rights were clearly established. It noted that according to Grawey's version of the facts, he was not ordered under arrest, he stopped running away, he waited for police with his hands against a wall, and he was immediately pepper sprayed by Saad until he lost consciousness. The District Court correctly concluded that Grawey had a clearly established constitutional right not to be pepper sprayed if he submitted to police authority. As to Davis' conduct, Grawey's rights were clearly established because there was no legitimate justification for Davis' acts on an unconscious person.[8]

Based on the caselaw that existed on June 16, 2005, the date of the alleged use of excessive force, Saad was on notice that his actions were unconstitutional. The general consensus among our cases is that officers cannot use force, including pepper spray, on a detainee who has been subdued, is not told he is under arrest, or is not resisting arrest. *See e.g.*, *McDowell*, 863 F.2d at 1307 (need for force is "nonexistent" when suspect is handcuffed and not trying to resist or escape); *Atkins*, 94 F. App'x at 342

---

[8]Though ultimately reaching the correct decision, the District Court's analysis of the clearly established constitutional right was incomplete and missed a critical inquiry. The District Court focused only on whether Grawey had a right not to be pepper sprayed and not have his leg twisted and bent back. The District Court did not analyze whether Defendants were on notice that their actions were unconstitutional.

(qualified immunity denied where detainee was pepper sprayed and struck with a baton where he was not told he was under arrest); *Adams*, 31 F.3d at 375 (excessive force claim could be supported where police used mace on plaintiff who was walking away and was not told he was under arrest).

*Monday* and *Greene*, two key cases raised by Saad, do not support Saad's contentions because the plaintiffs in those cases, unlike Grawey, were resisting arrest or otherwise not complying with police orders. In *Monday*, the plaintiff was a 300-pound drunk man, who presented a danger to himself and needed to be taken to the hospital, and who told the officer he would have to pepper spray him in order to be subdued. In *Greene,* the plaintiff verbally resisted arrest and then physically resisted arrest by walking away. Additionally, as discussed *supra*, the officer in *Greene*, unlike Saad, complied with his department's pepper-spray policy.

Thus, viewing the evidence in the light most favorable to Grawey, Saad was on notice that pepper spraying Grawey constituted excessive force. While we must examine the issue from the perspective of the police officer, a reasonable police officer would know that using pepper spray on a suspect who has submitted, is not resisting, and is no danger to anyone constitutes excessive force. Moreover, discharging enough pepper spray in a detainee's face to cause him to lose consciousness is an obvious constitutional violation that does not require a specific body of caselaw to be clearly established. *Brousseau*, 543 U.S. at 199.

Davis was also on notice that his actions violated a clearly established constitutional right. While we agree with Davis that there is no specific body of caselaw indicating that using an unconscious suspect's foot and leg as a lever to turn him over is an unreasonable use of force, the lack of precedent does not absolve Davis' conduct. *See Hope*, 536 U.S. at 741. Viewing the facts in a light favorable to Grawey (facts which Davis does not challenge in any significant way), Davis took Grawey's foot, and using the leverage from the twist of the foot, turned Grawey's entire body over. What makes this a clearly established constitutional violation is the use of an inherently hazardous type of force, one that any reasonable person would know is likely to cause

serious injury to an ankle, knee, or leg, without any justification for doing so.  In the absence of exigent circumstances or other legitimate law-enforcement consideration, a reasonable officer would have known that turning over a limp and unconscious detainee's body using leverage from the twisting of his foot is a use of excessive force that is sufficiently obvious under general standards of constitutional care.  *See Brousseau*, 543 U.S. at 199.  Therefore, viewing the facts in the light most favorable to Grawey, Davis violated Grawey's clearly established constitutional rights.  Summary judgment on qualified immunity grounds thus was appropriately denied.

**B.  *Assault and Battery Claims***

The District Court denied Defendant Saad's motion for summary judgment on both the assault and battery claims.  The District Court granted Davis' motion for summary judgment on the assault claim because Grawey was unconscious but denied summary judgment on the battery claim.

Under Michigan law an assault is "an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery." *People v. Nickens*, 685 N.W.2d 657, 661 (Mich. 2004).  A battery is "an unintentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person." *Id.*

Defendant Saad argues that Michigan law is identical to Fourth Amendment law, *Tope v. Howe*, 445 N.W.2d 452 (Mich. 1989), and that Saad is protected by governmental immunity if the Court concludes Saad's use of force was reasonable as a matter of law.  *See VanVorous v. Burmeister*, 687 N.W. 2d 132, 141 (Mich. 2004).  Because, viewing the facts in the light most favorable to Grawey, Saad's use of force was not reasonable as a matter of law, we uphold the District Court's denial of Saad's motion for summary judgment on the assault and battery claims.

Defendant Davis also argues that he is protected by governmental immunity.  Intentional torts in Michigan are governed by *Ross v. Consumer Power*, 363 N.W.2d 641 (Mich. 1984), which held that a government employee is immune if she acted or

reasonably believed she was acting within the scope of her authority, she acted in good faith, and she was performing discretionary acts, as opposed to ministerial acts. *See also Odom v. Wayne County*, No. 133433, 2008 WL 5505413 at *4-5 (Mich 2008) (holding that *Ross* applies to intentional torts while negligence is governed by Mich. Comp. Laws § 691.1407(2)). The critical inquiry is whether Davis' actions were taken in good faith. The District Court found that Grawey's evidence and supporting allegations created a triable issue that Davis did not act in good faith by turning over the unconscious Grawey by twisting his leg. Similar to Saad, Davis argues that the good faith analysis is essentially the same as the Fourth Amendment analysis. Thus, if the Court finds that Davis' actions were objectively reasonable, he acted in good faith and is therefore immune from a battery claim.

As discussed *supra*, Davis' use of force was not reasonable as a matter of law. Accordingly, the District Court's denial of Davis' motion for summary judgment on the battery claim is affirmed.

## III.  CONCLUSION

The District Court's denial of Defendant Saad's and Defendant Davis motion for summary judgment on qualified immunity grounds is affirmed. Viewing the facts in the light most favorable to Grawey, Defendants Saad and Davis used excessive force in arresting and securing Grawey, and Grawey's right not to be subjected to the force the officers used was clearly established on June 16, 2005. Additionally, because a reasonable jury might conclude that Defendant Saad is liable for assault and battery and that Defendant Davis is liable for battery under Michigan law, the District Court's denial of Defendants' motion for summary judgment on the assault and battery claims is affirmed.