NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0487n.06

No. 08-1724

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Aug 09, 2010**
LEONARD GREEN, Clerk

JEFFREY A. WOLGAST,  )
 )
    Plaintiff-Appellee,  )    ON APPEAL FROM THE
 )    UNITED STATES DISTRICT
    v.  )    COURT FOR THE EASTERN
 )    DISTRICT OF MICHIGAN
JOHN RICHARDS, Corporal,  )
 )
    Defendant-Appellant.  )    **OPINION**
_____  )

Before: KENNEDY, MOORE, and WHITE, Circuit Judges.

**HELENE N. WHITE**, Circuit Judge. Defendant John Richards appeals the district court order denying his motion for summary judgment in this action asserting § 1983 and state-law claims. We **DISMISS** in part, **VACATE** in part, **AFFIRM** in part, and **REMAND** for proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

The district court's April 2008 opinion provides a thorough account of the relevant background facts:

At 10:27 p.m. on May 29, 2004, central dispatch for the Tawas Police Authority ("TPA") in Tawas, Michigan, received a telephone call from a male who stated that the Crossroads Bar & Grill ("Crossroads") was going to "blow tonight," and then the man hung up the phone. The exact content of the call, as later transcribed, was as follows:

> There's a place in Tawas City called the Corssroads [sic]. That place is going to f***ing blow tonight. Nobody'll f***ing believe me. It's going to blow tonight.

The call, which was made from a pay phone near Freel's Market ("Freel's"), was interpreted as a bomb threat. Plaintiff's son was employed by Freel's and he worked at that location the night in question, with his shift ending at approximately 9:00 p.m. Defendant Richards contacted Officer Mark Ferguson ("Officer Ferguson") and together they proceeded to the area near the market where the pay phone is located. No one was near the phone and the officers were unable to locate anyone who had observed any recent use of the phone.

Since the officers were aware that Plaintiff Jeffrey Wolgast had made calls to TPA central dispatch complaining about excessive noise from Crossroads in the past, they suspected Plaintiff may have made the bomb threat as well. The officers' summary report indicates that after the officers did not locate anyone at the payphone, Defendant Richards called the TPA central dispatch and asked them to "pull up prior calls made by the Wolgast's [sic] and see if they sounded the same." The incident report goes on to say that "[Defendant] Richards was then advised, by Dispatcher Golimbiewski, that Dispatcher Soroka stated that it did sound like one of the Wolgast's [sic]." The report also notes that "Dispatcher's [sic] Golimbiewski and Soroka are the midnight crew at Central Dispatch and has [sic] talked to the Wolgast's [sic] on numerous occasions when they have called in regarding loud Music at Cross Roads."

The officers proceeded to Plaintiff's residence, where they questioned Plaintiff, his wife, and his son, all of whom denied making the call. The officers indicated to Plaintiff and his family that they would be sending tapes of Plaintiff's previous phone complaints and the tape of the bomb threat to the Michigan State Police crime lab for voice analysis and that, if the voices matched, Plaintiff would be charged with a felony. Although initially considered a suspect, Plaintiff's son, who had also complained about the noise at Crossroads in the past, was eliminated from suspicion by the officers after his mother stated that her son was home at the time the call was made.

Defendant Richards prepared an incident report that detailed his findings. The report documented his conversations with Plaintiff, his wife, and his son. In pertinent part, the report stated:

> [Defendant] Richards spoke to [Plaintiff] after speaking to [Plaintiff's wife] and [son]. [Plaintiff] admitted that he was out on a bicycle ride and that he had ridden down US-23 past Freel's Market. [Plaintiff] stated that he returned home from his bicycle ride approximately twenty to twenty five minutes prior to Officers [sic] arrival. *It should be noted that the call came in at 10:26 p.m. and Officers arrived at*

2

*[Plaintiff's] residence at [10:41 p.m.]*.[1]  [Plaintiff] claimed that he did not call 911 from the pay phone and that if it was him, he would just [sic] called from his own residence.  [Defendant] Richards advised that the caller was on tape and that it would be sent to the lab to be compared to [Plaintiff's] prior complaints about Cross Roads.  [Defendant] Richards then asked [Plaintiff] what the outcome of the tapes would be and [Plaintiff stated] that it would come back as not being his voice.

(emphasis in original).   Sometime after Defendant Richards instigated the investigation, he left the department for a position with the Michigan State Police.  As a result, Defendant Parent continued the investigation.

More than two months later, on August 4, 2004, a warrant was issued for Plaintiff's arrest.  The affidavit in support of the arrest warrant was signed and submitted by Defendant Parent.  Defendant Richards, however, drafted both the police report and the affidavit signed by Defendant Parent.  The affidavit states:

1. This incident occurred on 05-29-04 at approximately 10:26 p.m.  This incident occurred at 1139 W. Lake St. (Freel's Market payphone), City of Tawas City, County of Iosco, State of Michigan.

2. Bomb Threat:  At 10:26 p.m. Central Dispatch received a 911 call stating that there was a place in Tawas City by the name of Cross Roads and that it was going to blow, that it was going to blow tonight.  The caller then hung up the phone.

3. Dispatcher Soroka works the midnight shift and has taken several phone calls from Wolgast in the past.  Cpl. Richards was advised that the caller of the bomb threat sounded as [sic] the same as Wolgast.

4. Evidence:  Copy of bomb threat, prior calls made by Wolgast and radio/phone traffic between Central Dispatch and Cpl. Richards.  It should be noted that Wolgast calls into Central Dispatch numerous times a month concerning loud music at Cross Roads Bar and Grill.  Cpl. Richards has listened to the prior calls made by Wolgast and the

---

[1]The district court pointed out in a footnote that while the report states that the officers arrived at 10:31 p.m., subsequent testimony indicated that there had been a typographical error.  The parties agree on this point.

3

actual bomb threat.[2]  Cpl. Richards believes the caller to be the same on all the calls.

5. The suspect is Jeffrey Allen Wolgast, w/m, DOB: 11-14-56. Cpl. Richards spoke to Wolgast at his residence, on 05-29-04. Wolgast stated that he was out on a bicycle ride at the time the 911 call came in, and had ridden his bicycle by Freels Market. Wolgast stated that he did not make the bomb threat.

Police arrested Plaintiff on August 16, 2004, for violation of Michigan Compiled Laws 750.411a, false report or threat of bomb, a felony carrying a maximum punishment of four years in prison and a $2,000 fine. The county dismissed the charge on September 28, 2004, the day on which the preliminary examination was scheduled to take place, because, according to the Complaint, the dispatchers could not identify Plaintiff's voice.[3]

(ROA II 993-96.) (brackets in original, internal citations omitted).

In October 2005, Jeffrey Wolgast, pro se, filed this action alleging various federal constitutional and state tort claims. In particular, Wolgast alleged federal constitutional violations for retaliatory prosecution for his noise complaints, wrongful arrest, false imprisonment, and conspiring to violate his civil rights. Wolgast also alleged state law claims for malicious prosecution and intentional infliction of mental and emotional distress. Wolgast named as defendants the Tawas Police Authority, Police Chief Dennis Frank, and officers Steven Parent and John Richards.

---

[2]Richards contacted the Michigan State Police to do a voice comparison of the recordings, but was informed that they do not perform that analysis. He contacted a private analyst who could not do a voice analysis apparently because the samples did not contain ten separate words that could be compared. (Record on Appeal, Volume II ("ROA II") 89.) Richards did not ask Wolgast if he would provide additional voice samples; he testified that he did not think Wolgast would provide them. (ROA II 808.)

[3]The September 2006 district court order stated that "[t]he case against the plaintiff was dismissed at the preliminary examination because there was no evidence that the voice on the tape recording of the threat call matched the plaintiff's voice. (ROA II 464.)

Defendants filed a motion to dismiss/for summary judgment. The district court granted the motion to dismiss as to the Police Authority and Chief Frank, and concluded that the state intentional infliction and federal conspiracy claims against Officers Parent and Richards failed as a matter of law. At this point, the remaining claims against Parent and Richards were the federal retaliation, false imprisonment, and unlawful arrest claims, and state malicious prosecution claims.

The parties engaged in discovery and took depositions, after which Wolgast moved for summary judgment and Parent and Richards filed a renewed motion for summary judgment. In October 2007, the magistrate judge issued a report and recommendation focusing on the specific factual assertions in the affidavit in support of the warrant application that Wolgast argued were false. The magistrate judge recommended that all claims against Officer Parent be dismissed and the claims against Officer Richards proceed. The district court adopted the result recommended by the magistrate judge, although it rejected the magistrate judge's conclusions with regard to some factual assertions. In its April 2008 opinion, the district court denied Wolgast's motion for summary judgment, and granted the defense motion as to Officer Parent. With respect to Officer Richards, the district court concluded that there were genuine fact issues regarding whether some of the misstatements in the affidavit were made with reckless disregard for the truth. The court's analysis was as follows:

> The report and recommendation focused on four alleged misstatements and found that a factual dispute existed as to whether the misstatements included in the affidavit were false. First, the affidavit stated that "[Wolgast] stated that he was out on a bicycle ride at the time the 911 call came in, and had ridden his bicycle by Freel's Market." Plaintiff denies that he drove by Freel's, and Defendant Richards acknowledged that Plaintiff did not state that he rode directly past Freel's. Defendant Richards contends that it is not a material misstatement because the inference is that Plaintiff's route took him into the vicinity of Freel's. Though Defendant Richards

5

offers a reasonable explanation, the fact that he attributes that statement to Plaintiff raises a triable issue of fact.

Additionally, the report indicated that Plaintiff stated that he returned home 20-25 minutes before the police arrived. Considering that the police arrived at 10:41 p.m. and the bomb threat was made at 10:26 p.m., the statement contained in paragraph five of the affidavit, that Plaintiff was riding his bike at the time of the bomb threat, is inaccurate. Defendant Richards contends that his subjective belief that these statements were truthful indicates that he did not act with reckless disregard for the truth. This ignores the fact that the affidavit directly attributed the statements to Plaintiff.

Next, [Magistrate] Judge Binder concluded that the statement that Plaintiff called dispatch numerous times a month, when in fact it appears that he called about once a month, is immaterial. Though the dispute is unaddressed by Defendant, the Court agrees with Judge Binder's conclusion, that the difference between numerous times a month and once a month, is an immaterial distinction.

Third, Judge Binder found that the inclusion of Defendant Richard[s'] personal opinion that the voice on the bomb threat was the same as Plaintiff's voice established a factual dispute, because Defendant Richards compared the tape with recordings of both Plaintiff and Plaintiff's son. The Court disagrees with the magistrate judge's conclusion. Assuming that Defendant Richards listened to voice exemplars from Plaintiff and Plaintiff's son, there is no indication that his opinion was intentionally or knowingly inaccurate. Furthermore, Plaintiff has not demonstrated any evidence that the inclusion of Defendant Richards' statement, that he believed the voice on the 911 call to be that of Plaintiff, was made with reckless disregard of the truth. As the magistrate judge noted, the possibility that Defendant Richards listened to tapes of Plaintiff and Plaintiff's son "reveals, at most . . . a negligent voice identification technique." Thus, Plaintiff has not met his burden establishing a factual dispute with respect to this statement and the Court rejects the magistrate judge's recommendation.

Finally, Judge Binder found the statement concerning the dispatcher's voice identification of Plaintiff creates a triable issue, because impeachment evidence exists that indicates the dispatcher believed that Plaintiff was not the caller. The affidavit stated that "Dispatcher Soroka works the midnight shift and has taken several phone calls from Wolgast in the past. Cpl. Richards was advised that the caller of the bomb threat sounded [] the same as Wolgast[."] Prior to the dispatcher's deposition, Plaintiff recorded the dispatcher stating that she did not believe that Plaintiff was the caller at the time of the bomb threat. The dispatcher's deposition contradicted this assertion. The magistrate judge's report discussed whether the recorded statement, as impeachment evidence, is legally sufficient to create a triable issue of fact.

Defendant Richards contends that this possible impeachment evidence is not sufficient to survive summary judgment. Plaintiff has not indicated any admissible evidence indicating that Defendant Richards['] inclusion of the statement that

6

Dispatcher Soroka stated that the voice on the 911 call sounded like Plaintiff was done with reckless disregard for the truth. Nor has Plaintiff demonstrated with admissible evidence that the statement itself is not true. Thus, the Court disagrees with the magistrate judge on this point.

Finally, Defendant Richards objected to the report and recommendation contending the magistrate judge erred in finding that the alleged misstatements discussed above establish a triable issue of fact. Though Plaintiff has a "heavy burden" in establishing that the statements were made with reckless disregard for the truth, the clear discrepancies between the affidavit and other admissible evidence establish triable issues of fact. Though the Court disagrees with the magistrate judge's conclusions with [] respect to some statements included in the affidavit, the Court does agree with Judge Binder's ultimate conclusion that the affidavit's statements regarding the timing and route of Plaintiff's bike ride reveal a genuine issue of fact that the statements in the affidavit were made with reckless disregard for the truth.

(ROA II 998-1001.) (internal citations omitted).

The court then reiterated, without explanation, the conclusion expressed in the opinion and order denying Richards' first motion for summary judgment: "if the offending provisions of the affidavit are redacted, the remaining allegations do not establish probable cause to arrest, and no reasonable officer could conclude otherwise."[4] (ROA II 1001.)

Richards timely appealed. Wolgast filed a motion to dismiss for lack of jurisdiction, which was denied by a panel of this court on October 27, 2008, the order specifying that Wolgast could renew his arguments.

---

[4]In denying the first motion for summary judgment, the district court (Judge David Lawson) noted the many questions of fact concerning whether the assertions in the affidavit were made with knowledge of falsity or reckless disregard of the truth. The "offending provisions" referred to in the initial decision would have included all the challenged statements.

**DISCUSSION**

I.      JURISDICTION

Wolgast contends that because Richards' arguments are fact based, this court lacks jurisdiction. Courts of appeals have jurisdiction over final orders and appealable interlocutory orders under 28 U.S.C. §§ 1291-92. *Grawey v. Drury*, 567 F.3d 302, 310 (6th Cir. 2009). In addition, this court may review interlocutory orders denying qualified immunity, so long as the appeal raises legal issues. *See id.* (citing *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)); *see also Moldowan v. City of Warren*, 578 F.3d 351, 370 (6th Cir. 2009) (this court's jurisdiction is limited to resolving "pure questions of law"); *See v. City of Elyria*, 502 F.3d 484, 490 (6th Cir. 2007) (district court's "determination that a given set of facts violates clearly established law is reviewable, while a determination that an issue of fact is 'genuine' is unreviewable."). Where a defendant's qualified immunity arguments on appeal rely exclusively on a disputed version of the facts, this court does not have jurisdiction to consider the appeal. *McKenna v. City of Royal Oak*, 469 F.3d 559, 561 (6th Cir. 2006).

This court's lack of jurisdiction over factual issues is the basis for the requirement that a defendant-appellant must "concede the most favorable view of the facts to the plaintiff for purposes of the appeal." *Estate of Carter v. City of Detroit*, 408 F.3d 305, 309-10 (6th Cir. 2005) (quoting *Berryman v. Rieger*, 150 F.3d 516, 563 (6th Cir. 1998)). It follows that this court generally lacks jurisdiction over a defendant's argument that refuses to concede disputed facts to the plaintiff. *See*, *e.g.*, *Everson v. Leis*, 556 F.3d 484, 496-97 (6th Cir. 2009); *Meals v. City of Memphis, Tennessee*, 493 F.3d 720, 727 (6th Cir. 2007). However, if "aside from the impermissible arguments regarding disputes of fact, the defendant also raises the purely legal question of whether the facts alleged . . .

8

support a claim of violation of clearly established law, then there is an issue over which this court has jurisdiction," *Everson*, 556 F.3d at 496 (quoting *Kirby v. Duva*, 530 F.3d 475, 481 (6th Cir. 2008)), and we "may simply ignore defendants' attempts to dispute [a] plaintiff['s] version of facts, obviating the need to dismiss the entire appeal for lack of jurisdiction." *Id*. (quotation marks omitted).

Richards raises arguments on appeal that concern fact questions or are based upon facts in dispute. Before this court, Richards presses three lines of argument: 1) that the district court's conclusion that there remained a genuine issue of fact whether Richards' affidavit statements were made with reckless disregard for the truth was in error, 2) that even if there were a fact issue as to whether some of Richards' statements were made with reckless disregard for the truth, other information in the affidavit established probable cause, and 3) Richards is entitled to governmental immunity on the state-law malicious prosecution claim. Because the determination whether a statement made in an affidavit is made with reckless disregard for the truth is a fact question, *United States v. Rice*, 478 F.3d 704, 709 (6th Cir. 2007), we are prevented from considering any of Richards' contentions in support of his first argument. We also cannot consider Richards' arguments that rely on disputed facts, like his being informed that Dispatcher Dawn Soroka thought the caller was "Wolgast" by the caller's voice, and Soroka's familiarity with Wolgast's voice based upon past calls. We dismiss for lack of jurisdiction these impermissible fact-based arguments.

II.     ANALYSIS

    A.     Applicable Law

        1.     Qualified Immunity

The defense of qualified immunity shields government officials performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A court, viewing the facts in the light most favorable to the plaintiff, determines whether 1) the violation of a constitutional right occurred, and 2) the constitutional right at issue was clearly established at the time of defendant's conduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009); *Grawey*, 567 F.3d at 309. Courts have the discretion to decide which of the two *Saucier* prongs should be addressed first, based on the circumstances of the case. *Pearson*, 129 S. Ct. at 818 (2009).

This court reviews the district court's denial of qualified immunity *de novo*. *Moldowan*, 578 F.3d at 375. When a defendant raises qualified immunity as a defense, the plaintiff has the burden to show that a constitutional right is clearly established; but, because qualified immunity is an affirmative defense, the defendant must establish that the challenged act was objectively reasonable in light of the law existing at the time. *See Everson v. Leis*, 556 F.3d at 494.

### 2. Constitutional Claims

The remaining federal constitutional claims against Richards are the First Amendment retaliatory-prosecution claim and the Fourth Amendment false-imprisonment and unlawful-arrest claims. The presence of probable cause would defeat each of these constitutional claims. *See Brooks v. Rothe*, 577 F.3d 701, 706 (6th Cir. 2009) (for a wrongful arrest claim to succeed under § 1983, plaintiff must prove that police lacked probable cause); *Hartman v. Moore*, 547 U.S. 250, 252 (2006) ("want of probable cause must be alleged and proven" to state actionable retaliatory prosecution claim); *Gumble v. Waterford Township*, 171 F. App'x. 502, 507 (6th Cir. 2006)

10

(unpublished) (quoting *Mark v. Furay*, 769 F.2d 1266, 1269 (7th Cir. 1985) ("the existence of probable cause for an arrest totally precludes any section 1983 claim for unlawful arrest, false imprisonment, or malicious prosecution, regardless of whether the defendants had malicious motives for arresting the plaintiff.").

"Probable cause exists if the facts and circumstances known to the officer warrant a prudent [person] in believing that the offense has been committed." *Brooks*, 577 F.3d at 706 (6th Cir. 2009) (quoting *Henry v. United States*, 361 U.S. 98, 102, (1959)). "A finding of probable cause does not require evidence that is completely convincing or even evidence that would be admissible at trial; all that is required is that the evidence be sufficient to lead a reasonable officer to conclude that the arrestee has committed or is committing a crime." *Everson*, 556 F.3d at 498-99 (citation omitted). The existence of probable cause in a § 1983 action is generally a jury question, "unless there is only one reasonable determination possible." *Id*. at 499. But under § 1983, an officer is entitled to qualified immunity if "he or she could reasonably (even if erroneously) have believed that the arrest was lawful, in light of clearly established law and the information possessed at the time by the arresting agent." *Id*. (citation omitted).

Here, a neutral and detached magistrate made the decision that there was probable cause. Such decisions generally insulate police officers from liability. *See Hale v. Kart*, 396 F.3d 721, 725 (6th Cir. 2005) ("In § 1983 actions, an officer ordinarily receives qualified immunity if he or she relies on a judicially secured warrant."). However, "an officer cannot rely on the judicial determination of probable cause if that officer knowingly makes false statements and omissions" that are necessary to find probable cause. *See Yancey v. Carroll County, Ky.*, 876 F.2d 1238, 1243 (6th Cir. 1989). As this court has explained,

11

> An action under § 1983 does lie against an officer who obtains an invalid search warrant by making, in his affidavit, material false statements either knowingly or in reckless disregard for the truth. *Donta v. Hooper*, 774 F.2d 716, 718 (6th Cir.1985) (per curiam), *cert. denied*, 483 U.S. 1019, 107 S. Ct. 3261, 97 L. Ed. 2d 760 (1987). This standard originates in *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978), a suppression case in which the Supreme Court defined the Fourth Amendment's guarantee in the context of search warrants issued on the basis of false affidavits: only if "a false statement [was made] knowingly and intentionally, or with reckless disregard for the truth" and if, "with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause," is there a constitutional violation under the Fourth Amendment. *Id.* at 155-56, 98 S. Ct. at 2676.

*Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989). Such statements undermine an otherwise valid warrant application. *See Burke v. Town of Walpole*, 405 F.3d 66, 81-82 (1st Cir. 2005).

Accordingly, the warrant's facial validity here is of little importance to the question of Officer Richards' liability. In this context, Wolgast must make a preliminary showing that Officer Richards engaged in deliberate falsehood or reckless disregard for the truth in omitting information from, or making false statements in, the affidavit. *See Hale*, 396 F.3d at 726 (omissions); *Hill*, 884 F.2d at 275 (false statements). If Wolgast succeeds, the court then considers whether, setting aside the false material, the remaining content nevertheless establishes probable cause. *Id*.

B. Application

We accept the district court's factual conclusion that Wolgast made the requisite showing that Richards engaged in deliberate falsehood or reckless disregard for the truth. The district court also found that if the offending provisions are redacted, the remaining allegations do not establish probable cause and no reasonable officer could conclude otherwise. Richards challenges these conclusions as incorrect as a matter of law.

After excising Richards' problematic statements,[5] and also ignoring content about which there is a legitimate factual dispute, the remaining affidavit allegations are that 1) Wolgast called Central Dispatch numerous times concerning loud music at the Crossroads, 2) Officer Richards listened to Wolgast's prior calls and to the actual bomb threat and "believe[d] the caller to be the same on all the calls,"[6] and 3) Richards interviewed Wolgast at his residence the day of the call (where Wolgast said he did not make the bomb threat). Richards argues that his belief that the bomb-threat caller sounded like Wolgast, based on his own knowledge of Wolgast's voice, is sufficient to establish probable cause, and asserts that the only reasonable determination is that the remaining allegations of the affidavit are sufficient to lead a reasonable officer to conclude that Wolgast committed a crime.[7]

---

[5]Although Officer Parent is the official "affiant," because Richards actually drafted the affidavit information for Parent, Richards' actions can be the source of a Fourth Amendment violation. *See, e.g., United States v. Brown*, 298 F.3d 392, 408 (5th Cir. 2002) ("a deliberate or reckless misstatement or omission by a government official who is not the affiant may nevertheless form the basis of a *Franks* claim."). At no point does Richards argue he is not liable on this basis.

[6]It is worth clarifying that Richards does not purport to rely on his own comparison of Wolgast's prior calls with the bomb threat call as the only source for his voice identification. He also cites Dispatcher Soroka's purported identification of the bomb threat caller as someone who "sounded [] the same as Wolgast." However, we cannot consider Officer Soroka's identification, as it is the subject of factual dispute between the parties. *See*, *e.g.*, *McKenna*, 469 F.3d at 561.

[7]Richards also raised other arguments we will not address. They include that Richards' probable cause conclusion was supported by the fact that Police Chief Frank also thought that the caller's voice sounded like Wolgast and the fact that none of the dispatchers who received the call said that the caller did *not* sound like Wolgast, and that a reasonable officer in Richards' position could have reasonably, if mistakenly, thought that probable cause existed, as evidenced by the opinions of Chief Frank, the prosecutor, and Richards' previous co-defendant, Officer Parent, that probable cause was established. These arguments are beyond the scope of our inquiry here, which is necessarily limited to the content of the affidavit.

A credible voice identification can be sufficient to establish probable cause; a voice identification based on little familiarity may not be. *Compare Ricci v. Urso*, 974 F.2d 5, 7 (1st Cir. 1992) (though voice comparison can be a proper basis for establishing identity, no probable cause where detective without expert training compared 60-second recording of plaintiff with recordings of individual placing illegal bets with the same first name), *with United States v. Brown*, 510 F.3d 57, 67-68 (1st Cir. 2007) (in trial admissibility context, voice identification of law enforcement officials who had transcribed hundreds of hours of tapes of defendant, and learned the distinct manner in which he spoke, sufficiently reliable).

The district court simply stated its conclusions that the remaining allegations do not establish probable cause to arrest and that no reasonable officer could conclude otherwise. It did not explain its reasons for so concluding. One can speculate as to why the court may have made the probable cause determination it did. For example, the court may have concluded that a voice identification based on hearing Wolgast's voice only a few times[8] is insufficient in the face of the experts' inability to make a voice identification. It may also be that the district court simply failed to engage in a new probable-cause inquiry, relying on the earlier decision without reevaluating that determination in light of its other decisions on the renewed motion.

---

[8]Richards never spoke with Wolgast on the phone. Although Richards did speak in person with Wolgast, the probable cause affidavit represents only that Richards compared recordings of Wolgast's calls with the call at issue. Thus, he did not base the voice identification on personal familiarity with Wolgast's voice. These same recordings were given to the expert who was unable to make an identification. The dispatcher's voice identification was disputed. The court accepted that Richards was told that the dispatcher had said that the voice sounded like Wolgast, but this identification could also be seen as resting on infrequent and fleeting telephone interaction. Further, it appears that Richards suggested to the dispatcher that Wolgast may have been the caller.

14

In any case, our review of this legal decision is *de novo*. It is also the case that we may affirm on any ground supported by the record. *See Dixon v. Clem*, 492 F.3d 665, 673 (6th Cir. 2007). Thus we need not explore further the absence of thorough analysis from the district court on this point. Richards' affidavit failed to provide any basis on which to measure the reliability of his claim that he could identify the voice of the bomb-threat caller as Wolgast's. It does not provide the number or length of calls that Richards heard, the sound quality, or any other identifying features about the phone lines or Wolgast's voice. The lack of additional information to strengthen Richards' unprofessional voice identification makes this case more like the situation in *Ricci* and less like that in *Brown*. We affirm the district court's conclusion on this point.

C. State Law Claims

Wolgast's state-law malicious prosecution claim remains. Before the district court, Richards argued that he was entitled to qualified governmental immunity because his conduct did not amount to gross negligence. *See* Mich. Comp. Laws § 691.1407(2). The district court rejected this argument, finding that Richards' use in the affidavit of factually inaccurate statements that he attributed to Wolgast "gives rise to the inference that Defendant Richards acted with gross negligence when creating the affidavit." (ROA II 1005.) Before this court, Wolgast again claims he is entitled to immunity based on state law. However, for the first time, he raises another argument – that the prosecutor's exercise of independent discretion in initiating and maintaining a prosecution is a complete defense to an action for malicious prosecution. *See Matthews v. Blue Cross Blue*

15

*Shield of Michigan*, 572 N.W.2d 603, 613 (Mich. 1998); *Morningstar v. City of Detroit*, 617 F. Supp. 2d 570, 578 (E.D. Mich. 2009).[9]

With regard to the claim that the district court did consider, the court applied the wrong standard. Section 691.1407(2) of the Michigan Compiled Laws, the provision that contains the gross-negligence standard cited by the district court, does not apply to intentional torts, including malicious prosecution. *See Odom v. Wayne County*, 760 N.W.2d 217, 223-24 (Mich. 2008); *Miller v. Sanilac County*, 606 F.3d 240, 254 (6th Cir. 2010) (applying *Odom*'s holding in malicious prosecution context). In 2008 the Michigan Supreme Court set out the governing standard: a defendant establishes entitlement to individual governmental immunity by showing 1) the acts were undertaken during the course of employment, and the employee was acting, or reasonably believed that he was acting, within the scope of his authority, 2) the acts were undertaken in good faith, or were not undertaken with malice, and 3) the acts were discretionary and not ministerial. *Odom*, 760 N.W.2d at 228. We vacate the relevant portion of the district court's order and direct the court to evaluate Richards' governmental immunity claim under the *Odom* standard.

With regard to Richards' prosecutorial-discretion defense, because the district court has not yet had the opportunity to consider this argument, we will not evaluate it for the first time here.

_____

[9]We have jurisdiction to consider the district court's denial of governmental immunity on the remaining state law claim. *See Marvin v. City of Taylor*, 509 F.3d 234, 251 (6th Cir. 2007) ("we have held repeatedly that, because the denial of governmental immunity is now a 'final order' providing defendants with an appeal of right to the Michigan Court of Appeals, this court has jurisdiction over interlocutory appeals concerning pendent state law claims of governmental immunity.") (citation omitted).

III. CONCLUSION

We **DISMISS** in part, **VACATE** in part, **AFFIRM** in part, and **REMAND** for further proceedings consistent with this opinion.