NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0316n.06

No. 17-1941

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| WEST CONGRESS STREET PARTNERS, LLC, | ) | **FILED** |
|  | ) | Jun 26, 2018 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| RIVERTOWN DEVELOPMENT, LLC; RIVERTOWN HOLDINGS, LLC; RIVERTOWN DEVELOPMENT GROUP, LLC; MARK RIETH; CITY OF DETROIT; IVAN LUCKEY; JUSTIN TAITE; AUSTIN HUNTER; DENNIS SMITH; RANDY MCGHEE; AUSTON CARR; WILLIE ROBINSON; WAYNE COUNTY; JOHN DOE of the Wayne County Sheriff's Department, | ) ) ) ) ) ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
|  | ) |  |
| Defendants-Appellees. | ) |  |

Before: GIBBONS, THAPAR, and LARSEN, Circuit Judges.

LARSEN, Circuit Judge. This is a landlord-tenant dispute concerning a Detroit property that West Congress Street Partners, LLC ("West Congress"), leased from Rivertown Development, LLC ("Rivertown"). Following a bitterly contested eviction action in state court, West Congress sued its former landlord in federal court. West Congress alleged that Rivertown's pursuit of the eviction breached the parties' settlement agreement in the state-court proceedings, constituted racial discrimination, and was the product of a conspiracy between Rivertown and various local officials. The district court dismissed the case for failure to state a claim. We AFFIRM.

I.

West Congress operated a bar on a property it leased from Rivertown. Without the latter's permission, West Congress made alterations to the property and began using it as a cabaret in violation of the lease, Detroit zoning ordinances, and Michigan liquor laws. Rivertown eventually sued for possession in Wayne County Circuit Court, and West Congress brought counterclaims for, inter alia, retaliatory eviction.

After a bench trial, the state court awarded possession to Rivertown, expressly granting it the right to seek a writ of eviction. The court subsequently ordered "that any and all proceedings to enforce the Corrected Judgment of Possession in this matter be stayed subject to [West Congress] perfecting its appeal to the Michigan Court of Appeals." In March 2015, that court concluded it lacked jurisdiction because none of the trial court's orders finally disposed of West Congress's counterclaims, and accordingly dismissed West Congress's motion for appeal as of right. The court of appeals instructed West Congress to file a delayed application for leave to appeal if it desired review of those orders. West Congress did so on March 31, 2015.

Meanwhile, because West Congress was still in possession of the property and "continue[d] to operate as a cabaret in violation of the Lease, City of Detroit Zoning ordinances, and State Liquor Control Laws," the state trial court appointed a receiver to operate West Congress's business while the parties continued to litigate their respective claims for money damages. The receiver doubled as the court's appointed facilitator and, failing facilitation, as the "case evaluator" tasked with suggesting a settlement amount.[1]  *See* Mich. Ct. Rule 2.403.

---

[1] Case evaluation is a Michigan method of alternative dispute resolution pursuant to which the appointed case evaluator proposes an award to resolve the case. The court enters judgment "in accordance with the evaluation" if all parties accept the proposed award. Mich. Ct. Rule 2.403 (M)(1).

On April 13, 2015, the receiver proposed the following case-evaluation award: "West Congress . . . shall receive the sum of One [Hundred] Twenty-Five Thousand ($125,000.00) Dollars from . . . Rivertown." In the award's "comments" section, the receiver added: "West Congress . . . shall vacate the premises within 90 days of acceptance of the award by both parties." In early May 2015, the parties agreed to the case-evaluation award.

But, as the district court put it, "[s]omething went awry." On April 24, 2015, after the receiver had filed his case evaluation but before the parties had agreed to it, Rivertown sought an immediate eviction order. Rivertown alleged that West Congress had secretly operated the property as a cabaret on three occasions *after* the receiver filed the case-evaluation award, in violation of the court's and the receiver's outstanding operating conditions. Rivertown indicated that the Michigan Court of Appeals had dismissed or found defective all of West Congress's attempts at appeal, and as such the trial court's stay of the judgment of possession was no longer effective, permitting enforcement. On May 15, 2015, the trial court issued an eviction order, and a court officer executed it the same day.

A number of Detroit police officers were present when the court officer served the eviction order at the bar. According to the Detroit police, they dispatched officers to the property after a 9-1-1 call reported a large crowd at the scene of an eviction. West Congress acknowledges that there was a large crowd outside, due to a race in downtown Detroit. West Congress alleges that several unnamed Wayne County sheriff's deputies assisted the officers, which Wayne County denies.

After the eviction, West Congress brought an emergency motion in state court to enforce the parties' case-evaluation settlement and to hold Rivertown in contempt of court. West Congress claimed that Rivertown had obtained the eviction order under false pretenses, as West Congress's delayed application for leave to appeal, filed about six weeks before, remained pending in the

Michigan Court of Appeals. West Congress contended further that the eviction directly conflicted with the parties' settlement agreement, which, on West Congress's reading, allowed it to remain on the property for ninety days.

After a hearing, the state court enforced the settlement agreement. Specifically, it ordered Rivertown to return the property's keys to the receiver and provided that West Congress did not have to vacate the property until August 2, 2015, ninety days after the parties had accepted the case-evaluation award. The receiver did not allow West Congress's owner on the property by himself for the remainder of the ninety-day period and, on the court's order, made the owner's wife responsible for the keys. The court further ordered Rivertown to pay West Congress $125,000 when West Congress moved out and ordered West Congress to dismiss its pending application for leave to appeal the judgment of possession in the state court of appeals. West Congress eventually moved out, the court discharged the receiver, and Rivertown paid its former tenant $125,000.[2]

II.

Later that year, West Congress initiated the instant action in the Eastern District of Michigan, naming as defendants Rivertown, the Detroit Police Department, and an unnamed individual police officer. As relevant to this appeal, West Congress alleged that Rivertown had breached the parties' settlement agreement by evicting West Congress and had conspired with the other defendants to do so, in violation of 42 U.S.C. §§ 1985 and 1986. West Congress also claimed that Rivertown had violated Michigan's Elliott-Larsen Civil Rights Act (ELCRA), Mich. Comp.

---

[2] The Michigan Court of Appeals denied West Congress's delayed application for leave to appeal on October 2, 2015, "since, per [West Congress's] representation to the Court, the matter has been settled." *Rivertown Dev. Grp. LLC v. W. Cong. St. Partners LLC*, No. 326686 (Mich. Ct. App. Oct. 2, 2015) (order).

Laws § 37.2502. The district court dismissed the complaint against Rivertown for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

West Congress then amended its complaint to name seven Detroit police officers, who West Congress claimed were present for the eviction, and added as defendants Wayne County and an unnamed sheriff's deputy, who West Congress alleged had also attended the eviction. West Congress alleged that the City of Detroit, Wayne County, and the individual officers and deputy (hereinafter "the public defendants") had engaged in a conspiracy to effect a fraudulent eviction, in violation of 42 U.S.C. §§ 1985 and 1986, resulting in property damage and loss of earnings before West Congress was allowed to return to the premises. The district court dismissed the complaint against the public defendants for failure to state a claim under Rule 12(b)(6). West Congress timely appealed, arguing that the district court had erred in dismissing its breach-of-contract and ELCRA claims against Rivertown, as well as its conspiracy claims against the public defendants.

III.

Take the breach claim first. The case-evaluation award provided that West Congress "shall receive . . . $125,000.00" and "shall vacate the premises within 90 days of acceptance of the award by both parties." By May 5, 2015, the parties had agreed to this award, and the state court deemed the case settled on May 6. On May 15, the court ordered the eviction, which Rivertown had been seeking for several weeks preceding the parties' acceptance of the settlement.

In its emergency motion to undo the eviction, West Congress contended that the eviction contradicted the terms of the case-evaluation award. West Congress asked the court to enforce the settlement, return possession of the bar to West Congress, hold Rivertown in contempt, and award

West Congress "sanctions . . . for all costs and lost profits from the wrongful eviction."[3] West Congress specifically alleged that the eviction resulted in loss of earnings, as the bar was forcibly closed at what likely would have been a profitable time, and West Congress was forced to cancel and refund several private events.

West Congress secured some, but not all, of the relief it sought. The state court reversed the eviction. It ordered that West Congress have the benefit of the rest of the ninety-day period provided for in the settlement and that Rivertown pay the previously agreed-upon sum when West Congress moved out. The court did not hold Rivertown in contempt, however, nor award any kind of damages for the eviction's effects on West Congress.

In this federal case, West Congress asserts the same claim: that the eviction before expiration of the ninety-day period violated the parties' agreement and that West Congress is entitled to resulting damages, as well as interest, costs, and fees. But having made the same argument and the same request before the state trial court, West Congress cannot now relitigate its entitlement to damages for the same conduct. We give state-court judgments the same preclusive effect that the state's courts would. 28 U.S.C. § 1738; *Ohio ex rel. Boggs v. City of Cleveland*, 655 F.3d 516, 519 (6th Cir. 2011). In Michigan, a party is estopped from relitigating a question of fact essential to the judgment if that question was already litigated and determined in an earlier proceeding, provided that the same parties had a full and fair opportunity to litigate the issue and there is mutuality of estoppel; that is, the party taking advantage of the earlier judgment would be

---

[3] West Congress also contended that Rivertown had misled the court in seeking the eviction, because Rivertown had represented that West Congress's pending appeal of the judgment of possession had been resolved. West Congress argued that, because the appeal was in fact still pending, the eviction violated not only the terms of the parties' settlement agreement but also the trial court's outstanding stay of enforcement of the judgment of possession. In federal court, West Congress claims only breach of the settlement agreement.

bound by it if the parties' fortunes were reversed. *Monat v. State Farm Ins. Co.*, 677 N.W.2d 843, 845–47 (Mich. 2004).

Here, West Congress argued in state court that Rivertown's conduct violated the settlement agreement. The state court apparently agreed because it enforced the settlement. West Congress also sought damages for the violation, but the state court refused them. Michigan law precludes West Congress from recycling its earlier claim for violation of the settlement, as well as trying again to win damages for that violation.[4] The district court accordingly did not err in dismissing West Congress's breach claim.[5]

---

[4] In the district court and in this court, Rivertown has argued that the *Rooker–Feldman* doctrine precludes federal jurisdiction over this case. We disagree. The *Rooker–Feldman* doctrine concerns situations where plaintiffs "complain[] of an injury caused by the state-court judgment and seek[] review and rejection of that judgment." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005). On the other hand, where a plaintiff complains of "some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim" that does not implicate *Rooker–Feldman*. *McCormick v. Braverman*, 451 F.3d 382, 392–93 (6th Cir. 2006). Here, like the plaintiff in *McCormick*, West Congress alleges injury from Rivertown's actions in evicting West Congress just a week after it had contracted to settle the case. For claims like this, which assert a source of injury independent of the state court's judgment itself, "the Supreme Court has instructed that preclusion law is the appropriate solution." *Id.* at 392.

West Congress does not ask us to "overturn" the state court's eviction order or any aspect of the court's later reversal of that order and enforcement of the settlement agreement. *Exxon Mobil*, 544 U.S. at 292. Certainly, the state court did not choose to award West Congress damages when the court enforced the agreement, but the fact that a plaintiff did not win everything it wanted in state court does not reassign the source of the injury from the defendant to the state-court judgment itself. *See McCormick*, 451 F.3d at 394 ("The fact that the state court chose not to remedy the injury does not transform the subsequent federal suit on the same matter into an appeal, forbidden by *Rooker-Feldman*, of the state-court judgment." (quoting *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 88 (2d Cir. 2005))). It is accordingly preclusion law, not an absence of federal jurisdiction, that dispatches West Congress's claim.

[5] Rivertown properly raised collateral estoppel as a defense, both before the district court and on appeal. *See Smith v. Sushka*, 117 F.3d 965, 969 (6th Cir. 1997). Although the district court did not dismiss the breach claim on preclusion grounds, "we 'may affirm for any reason presented in the record.'" *Clark v. United States*, 764 F.3d 653, 660–61 (6th Cir. 2014) (quoting *Loftis v. United Parcel Serv., Inc.*, 342 F.3d 509, 514 (6th Cir. 2003)).

IV.

West Congress next contends that the district court erred in dismissing its state-law discrimination claim against Rivertown, as well as its federal conspiracy claims against the City of Detroit, Wayne County, and the individual police officers and sheriff's deputy. We review de novo a district court's ruling on a 12(b)(6) motion to dismiss. *Kaminski v. Coulter*, 865 F.3d 339, 344 (6th Cir. 2017). While we accept the complaint's allegations as true, *id.*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is *plausible* on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). And while we draw all reasonable inferences in the plaintiff's favor, *Kaminski*, 865 F.3d at 344, the plaintiff must plead "factual content that allows [us] to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678.

Here, no plausible claim to relief emerges from West Congress's complaint. It contains no factual content permitting a reasonable inference that Rivertown discriminated against West Congress on account of race, in violation of state law; or that local officials conspired to deprive West Congress of its rights, in violation of federal law.

A.

Michigan's Elliott-Larsen Civil Rights Act prohibits race discrimination in real estate transactions. Mich. Comp. Laws § 37.2502(1). But West Congress alleges no facts that give rise to an inference of discrimination on the part of Rivertown. Indeed, all the complaint offers in the way of facts is that West Congress's owner is black, his wife is white, and the court put the bar keys in the charge of the owner's wife during the ninety-day period preceding moveout. To this

West Congress adds a conclusory statement to the effect that Rivertown schemed to end the lease on account of the owner's race.

The state court and the receiver found, however, that even during the litigation of this case West Congress was altering the property and operating it as a cabaret without permission and in defiance of the court's orders—claims West Congress does not dispute. And the receiver explained in his report to the court that West Congress's owner's wife had been made responsible for the keys "because of the difficult relationship between the parties." There is no plausible claim of discrimination here, and the district court did not err in dismissing it.

B.

So too with West Congress's federal conspiracy claims against the City of Detroit, Wayne County, and the individual police officers and sheriff's deputy. To state a claim under 42 U.S.C. § 1985, a plaintiff must allege (1) that a conspiracy existed; (2) for the purpose of depriving any person of the equal protection of or equal privileges and immunities under the laws; (3) that there was an act in furtherance of the conspiracy; and (4) that the act injured a person or deprived him of his rights. *United Bhd. of Carpenters & Joiners of Am. v. Scott*, 463 U.S. 825, 828–29 (1983). Where the wrongful act occurs, 42 U.S.C. § 1986 creates liability for those who, "having knowledge that any of [these] wrongs conspired to be done . . . are about to be committed," and "having power to prevent or aid in preventing" them, do nothing.

"[W]e are not bound to accept as true a legal conclusion couched as a factual allegation," but that is all West Congress has given us. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). West Congress alleges that the public defendants participated in a "concerted effort" to deprive West Congress of its property through a fraudulent eviction. West Congress asserts that this "effort" was "part of a long and voluminous history of abuses and civil rights violations"—a "complex

conspiracy to evict an African-American Tenant and replace Plaintiff with a Caucasian-owned and operated bar/restaurant/brewery," in which the defendants "played a substantial role." According to West Congress, the public defendants had direct knowledge of the settlement agreement, but nonetheless "prepar[ed] and plann[ed] to enlist approximately thirty (30) officers of the court" to aid in the eviction on the same day the order was fraudulently obtained, "reveal[ing] that a concerted effort aided in the conspiracy to wrongfully evict and lock out Plaintiff."

There is no factual content here sufficient to state with any plausibility the elements of 42 U.S.C. §§ 1985 and 1986. West Congress offers "nothing more than the conclusory allegation that the defendants acted in concert and, without more, fail[s] to allege a sufficient factual basis to establish any sort of 'meeting of the minds' or to link any of the alleged conspirators in a conspiracy to deprive [it] of [its] civil rights." *Amadasu v. Christ Hosp.*, 514 F.3d 504, 507 (6th Cir. 2008). As the district court rightly observed, West Congress does not connect the individual officers and deputy to any particular conduct. Nor does West Congress link the asserted injury to any action or policy of Wayne County or the City of Detroit. *See Smith v. City of Troy*, 874 F.3d 938, 946–47 (6th Cir. 2017). The district court did not err in dismissing the claims against the public defendants.

* * *

Because Michigan preclusion law bars West Congress's first claim, and its second and third claims fail the Rule 12(b)(6) standard, we AFFIRM the district court's judgment.