RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0100p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

LATOYA AARON, as Legal Guardian of Derek Aaron,
an Incompetent Individual,

        *Plaintiff-Appellee,*

    *v.*

DARREN KING; EDWARD PAWLOWSKI; EUGENE
FIELDER, Officers,

        *Defendants-Appellants.*

No. 25-1629

───────────────

Appeal from the United States District Court for the Eastern District of Michigan at Flint.
No. 4:22-cv-11062—Shalina D. Kumar, District Judge.

Argued: January 28, 2026

Decided and Filed: April 1, 2026

Before: SUTTON, Chief Judge; STRANCH and LARSEN, Circuit Judges.

───────────────

## COUNSEL

───────────────

**ARGUED:** Cheryl L. Ronk, CITY OF DETROIT LAW DEPARTMENT, Detroit, Michigan, for Appellants. Robert G. Kamenec, FIEGER, FIEGER, KENNEY & HARRINGTON, P.C., Southfield, Michigan, for Appellee. **ON BRIEF:** Cheryl L. Ronk, CITY OF DETROIT LAW DEPARTMENT, Detroit, Michigan, for Appellants. Robert G. Kamenec, FIEGER, FIEGER, KENNEY & HARRINGTON, P.C., Southfield, Michigan, for Appellee.

───────────────

## OPINION

───────────────

SUTTON, Chief Judge. When officers attempted to arrest Derek Aaron for a home invasion and a violent robbery, he pulled his hands away and refused to place them behind his

back.  After pulling on Aaron's arms and issuing verbal orders, officers took him to the ground.
When Aaron sued the officers for excessive force under § 1983, they moved for summary
judgment based on qualified immunity.  The district court denied the motion in part, reasoning
that a jury could find that the officers violated Aaron's clearly established rights.  We disagree
and reverse.

I.

On May 6, 2019, as Drew Tartalone filled up his gas tank at a Sunoco station in central
Detroit, someone suddenly threw him to the ground and robbed him.  Tartalone described his
assailant as around 6'3" and 250 pounds, and witnesses at the gas station told police that the
perpetrator visited the establishment frequently.  Four days later, and only a few blocks away,
two men kicked in Corey Watts' back door and ran through his home before escaping in a black
SUV.  Officers investigating both crimes quickly took an interest in 6'4", 280-pound Derek
Aaron, age 22, a Sunoco regular who matched security footage of the robbery and called Watts
multiple times immediately before the home invasion.  After Watts and Tartalone identified
Aaron out of separate photo lineups, officers sought a warrant to arrest him.

On May 17, 2019, the police received an anonymous report indicating that Aaron was
back at the Sunoco.  Uniformed officers converged on the gas station to arrest him, and their
body cameras captured the encounter.  Four officers entered the Sunoco and surrounded Aaron,
walking him out of the register line and toward a nearby refrigerator.  The officers grabbed
Aaron's arms, tried to pull them behind his body, and ordered him to place his hands behind his
back.  They did not specifically tell Aaron that they intended to arrest him.  Aaron pulled his
arms back in front of his body and continually asked, "What's going on?", with rising levels of
distress.  R.32-20 at 00:36–01:17.  For around twenty seconds, officers continued pulling on
Aaron's arms and ordering him to put them behind his back while Aaron continued to demand an
explanation and hold his hands in front of his body.

Officers lifted Aaron's legs out from beneath his body and took him to the ground, where
the struggle continued.  Multiple officers tried to pull Aaron's arms behind his back to permit
handcuffing.  Aaron, again, pulled his hands in front of his body to prevent handcuffing.  At

some point, Officer Edward Pawlowski struck Aaron three times in the side with his knee.  After one officer told Aaron that he would break his arm if he did not put his hands behind his back, Aaron relented.  The State charged him with home invasion, unarmed robbery, and resisting and obstructing a police officer.  One charge was dropped, and the others were dismissed, perhaps because Aaron, unbeknownst to the officers at the time of his arrest, has autism.

Three years after the arrest, Aaron (through his legal guardian Latoya Aaron) sued the arresting officers under § 1983, alleging violations of the Fourth Amendment based on excessive force and a failure to intervene by other officers.  Asserting qualified immunity, the officers moved for summary judgment.  The district court denied qualified immunity as to the excessive force claims but granted it as to the failure-to-intervene claims.  The officers appealed.  *See Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985).

II.

Qualified immunity shields officials from lawsuits for money damages unless they violated clearly established constitutional rights.  *Reichle v. Howards*, 566 U.S. 658, 664 (2012).  It reflects the reality that subjecting officers to the time, expense, and risk of money-damages actions for uncertain violations of the Constitution would "dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties." *Nieves v. Bartlett*, 587 U.S. 391, 404 (2019) (quoting *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949) (L. Hand, C.J.)).  To overcome the officers' qualified immunity defense, Aaron must demonstrate (1) that the officers violated a constitutional right, and (2) that the right was clearly established.  *White v. Pauly*, 580 U.S. 73, 78–79 (2017) (per curiam).  Aaron does not satisfy the second prong, making it unnecessary to consider the first one.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Because the defense of qualified immunity exists to shield officers who did not act in an objectively unreasonable fashion, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  We therefore cannot define clearly established rights at too high a level of generality.  *City of Tahlequah v. Bond*, 595 U.S. 9, 12

(2021) (per curiam).  To prevail, Aaron must establish a violation "beyond debate," *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011), which "usually means the claimant must identify a case with facts similar enough that it squarely governs this one," *Moore v. Oakland County*, 126 F.4th 1163, 1167 (6th Cir. 2025) (quotation omitted).  "[G]eneral statements of the law are [also] capable of giving clear and fair warning to officers even where the very action in question has not previously been held unlawful." *Walker v. Davis*, 649 F.3d 502, 504 (6th Cir. 2011).

He does not make that showing.  Consider the circumstances facing the officers and the sequence of events, all undisputed and most of them captured on camera.  Aaron was a large man (6'4" and 280 pounds).  The police suspected that he had committed several violent crimes in recent days.  Probable cause existed to arrest Aaron (1) for an assault at the Sunoco gas station of a customer and robbery of him and (2) for a break-in of a nearby home.  The robbery at the Sunoco station was captured on camera, and Aaron does not dispute that the officers had probable cause to arrest him for both offenses.  Given Aaron's size, the violent nature of the crimes, and the recency of each of them, the police had ample reason to perform the arrest with several officers. *See Graham v. Connor*, 490 U.S. 386, 396 (1989).  What turns the arrest into a physical encounter is Aaron's decision not to make his hands available for handcuffing and to resist the officers' attempts to handcuff him.  As the video confirms, he repeatedly moved his hands away from the officers, making it impossible to handcuff him while he stood.  He tensed his body and locked his arms to prevent the officers from pulling his hands behind his back.  Even after the officers took him to the ground and one of them kneed him in the side, he struggled against the officers to keep his hands in front of his body.  Only when an officer threatened to break his arm did Aaron relent and permit the officers to handcuff him.

Nor was this a situation in which the suspect merely declined to follow the officer's instructions. *See, e.g.*, *Browning v. Edmonson County*, 18 F.4th 516, 527 (6th Cir. 2021) (refusing to get out of a car).  This was "a physical struggle to maintain control" of the suspect's limbs, what amounts to the kind of "volitional and conscious defiance" that permits increasing exercises of force by the officers to subdue the suspect. *King v. City of Rockford*, 97 F.4th 379, 396 (6th Cir. 2024) (quotation omitted).  When the officers told Aaron to put his hands behind his back, he did not simply stand there; he prevented the officers from moving his arms behind

his back for handcuffing by crying out and pulling his arms away, tensing his body and arms, and holding them tight against his side. *See Rudlaff v. Gillispie*, 791 F.3d 638, 642 (6th Cir. 2015) (noting that the arrestee "locked up his body . . . and admittedly refused to give [the officer] his hands"); *Moore*, 126 F.4th at 1168 ("resisting handcuffs"); *Bell v. City of Southfield*, 37 F.4th 362, 368 (6th Cir. 2022). In the context of the serious crimes at issue, the officers did not violate any clearly established law when they responded to Aaron's active resistance.

Aaron invokes several cases of his own in challenging this conclusion, but each is "several material steps removed from this one." *DeLanis v. Metro. Gov't of Nashville & Davidson County*, 160 F.4th 732, 745 (6th Cir. 2025). Few involve suspects arrested for serious and violent crimes, fewer still involve large suspects who pulled their hands away from officers and hid them to prevent handcuffing, and none involves all of these circumstances.

One of the cited cases, *Smith v. City of Troy*, illustrates the point. 874 F.3d 938 (6th Cir. 2017) (per curiam). An epileptic man experienced a seizure while driving, exited his car, and grabbed a chain-link fence. *Id.* at 942. A police officer arrived at the scene and peeled the man's hands off the fence. *Id.* The man pulled his hand away from the officer, who responded by wrestling him to the ground. *Id.* We emphasized that even the officer admitted that the man was sick and off balance. *Id.* at 945. And we held that "a non-violent, non-resisting, or only passively resisting suspect *who is not under arrest* has a right to be free from an officer's use of force." *Id.* (emphasis added). We cannot see how a case about a physically vulnerable man who did not commit any crime and was not attempting to resist arrest clearly establishes the law governing the arrest of a large and physically able man who was resisting arrest and for whom probable cause existed that he committed a home invasion and a violent robbery. *See Anderson*, 483 U.S. at 640.

Aaron next invokes a trio of cases, each involving far less serious offenses. *See Grawey v. Drury*, 567 F.3d 302, 311 (6th Cir. 2009) (disturbing the peace); *Atkins v. Township of Flint*, 94 F. App'x 342, 349 (6th Cir. 2004) (prank calling); *Adams v. Metiva*, 31 F.3d 375, 378 (6th Cir. 1994) (seat belt infraction). Those decisions also involve plaintiffs who were entirely incapacitated or fully compliant at the time of the challenged seizure. *Adams*, for instance, simply pointed out that "[a] reasonable person would know that spraying mace on a blinded and

incapacitated person sitting in a car would violate the right to be free from excessive force." 31 F.3d at 387.  Cases about compliant prank callers do not provide officers with fair notice of the standards applicable to the detention of a probable serial robber who resists arrest.  *See Poe v. Haydon*, 853 F.2d 418, 423 (6th Cir. 1988).  No less importantly, "[u]npublished decisions" like *Atkins* "cannot create clearly established rights."  *Chaney-Snell v. Young*, 98 F.4th 699, 725 (6th Cir. 2024).  The officers who arrested Aaron, it follows, did not violate clearly established rights.

*Saalim v. Walmart* does not change matters.  97 F.4th 995, 1007 (6th Cir. 2024).  In that case, an officer stopped a taxi driver for "a parking violation."  *Id.* at 1000.  The officer pulled his taser, forced the driver out of the cab, and shoved him so that his hands were on the cab and his back faced the officer.  *Id.* at 999–1000.  When the driver turned around to face the officer "with both hands visible and empty," the officer tased him for nine seconds.  *Id.* at 1000.  We held that the officer violated the driver's clearly established constitutional rights, but that conclusion does not help Aaron.  *Id.* at 1010.  For one thing, the officer in *Saalim* tased the cab driver while arresting him for "a parking violation," not a robbery and a home invasion.  *Id.* at 1004.  *Saalim*, furthermore, distinguished *Hagans v. Franklin County Sheriff's Office*, 695 F.3d 505 (6th Cir. 2012), and *Caie v. West Bloomfield Township*, 485 F. App'x 92, 96 (6th Cir. 2012), because both cases involved arrestees who "actively hid[] their hands from the officers." *Id.* at 1008.  Aaron did precisely that.  And while *Saalim* noted that *Hagans* and *Caie* involved "erratic and dangerous behavior" on the part of the arrestees, neither of those cases involved serious or violent crimes of arrest.  *Saalim*, 97 F.4th at 1008; *see Hagans*, 695 F.3d at 511 (noting officers suspected Hagans of at most an "innocuous crime[]," and potentially no crime at all); *Caie*, 485 F. App'x at 96 ("Plaintiff was not being arrested for a crime . . . .").

At oral argument, Aaron's counsel emphasized that the officers did not tell Aaron he was under arrest with respect to the assault and burglary.  Whether at argument or in his brief, however, Aaron never identifies a case that shows that the officers exceeded a clearly forbidden line by failing to make this point at the beginning of the encounter.  While it may be good practice to tell a suspect that he is under arrest at the outset of an encounter, particularly where the police deny a suspect a reasonable chance to comply, *see Grawey*, 567 F.3d at 311, or the

arrest concerns a minor crime, *see Atkins*, 94 F. App'x at 349; *Richards v. County of Washtenaw*, 818 F. App'x 487, 492 (6th Cir. 2020) (public intoxication), no authority to our knowledge requires such notice during an arrest for two violent felonies where the officers gave the suspect ample time to comply with their orders.

Aaron turns to an alternative theory. The officers violated his Fourth Amendment rights, he claims, by using knee strikes to subdue him once he fell to the ground. But Aaron's cases, yet again, turn on materially different facts and thus fail to provide the kind of clearly established law needed to pierce qualified immunity. In *Champion v. Outlook Nashville, Inc.*, for instance, officers handcuffed a prone arrestee and bound his ankles together. 380 F.3d 893, 897, 901 (6th Cir. 2004). Because the officers had already incapacitated the suspect, they violated the Fourth Amendment when they sprayed mace in his face and applied asphyxiating pressure to his back. *Id.* at 903. To describe the case is to distinguish it. Aaron continued to prevent handcuffing even on the ground; he was not incapacitated at the time Officer Pawlowski struck him with his knee.

Aaron's other cases are equally unhelpful. Some of them involve arrestees suspected of far less serious offenses that do not involve violence. *See, e.g.*, *Harris v. City of Circleville*, 583 F.3d 356, 366–67 (6th Cir. 2009) (DUI); *Phelps v. Coy*, 286 F.3d 295, 297, 301 (6th Cir. 2002) (open container violation); *Lawler v. City of Taylor*, 268 F. App'x 384, 386 (6th Cir. 2008) (OWI); *Shumate v. City of Adrian*, 44 F.4th 427, 441 (6th Cir. 2022) ("*misdemeanor* statute of opposing and obstructing an officer"). While others involve more serious crimes of arrest, they involve compliant or incapacitated arrestees. The police, for instance, arrested one of the plaintiffs in *Baker v. City of Hamilton* for burglary of a car. 471 F.3d 601, 604 (6th Cir. 2006). But he had already announced his willingness to comply when the officers choked him, sat on his back, and struck his head and legs. *Id.* at 608–09. Officers likewise arrested the plaintiff in *Smoak v. Hall* for armed robbery. 460 F.3d 768, 774–75 (6th Cir. 2006). But they had already handcuffed him, and he had already generally complied with orders by the time they slammed him to the ground face first. *Id.* at 783.

Aaron protests that the defendants' briefing in the district court forfeited the argument that he resisted the arrest. Although the district court agreed, it found only that the officers

forfeited this argument with respect to the first prong of the qualified immunity analysis. Because we consider only whether the defendants violated clearly established law, not whether they violated a constitutional right, any forfeiture with respect to the latter question does not matter. *Cf. Ashford v. Univ. of Mich.*, 89 F.4th 960, 975 (6th Cir. 2024) (holding that the defendants forfeited one prong of the qualified immunity analysis but not the other).

In a similar vein, Aaron argues that the defendants forfeited any argument as to the clearly established prong of the qualified immunity analysis by failing to raise it in their opening appellate brief. Parties, it is true, forfeit challenges to the district court's decision by failing to raise them in their opening brief. *Scarber v. Palmer*, 808 F.3d 1093, 1097 (6th Cir. 2015). And defendants, it is also true, may forfeit the defense of qualified immunity. *Cockrun v. Berrien County*, 101 F.4th 416, 419 (6th Cir. 2024). But our forfeiture rule exists "to avoid surprise and prevent sandbagging of appellees." *Glennborough Homeowners Ass'n v. U.S. Postal Serv.*, 21 F.4th 410, 415 (6th Cir. 2021) (quotation omitted). For that reason, we require only "some effort at developed argumentation," particularly where the opposing party was, as here, not surprised or prejudiced by the underdeveloped arguments. *Cockrun*, 101 F.4th at 420 (quotation omitted). And "[o]nce the defense is raised" Aaron—not the officers—bears "the burden of showing that the [officers'] conduct violated a right so clearly established that a reasonable official in that position would have clearly understood that he or she was under an affirmative duty to refrain from such conduct." *Barrett v. Steubenville City Schs.*, 388 F.3d 967, 970 (6th Cir. 2004).

The defendants adequately preserved the defense here. Their argument summary states that "no case law exists where the same set of circumstances exist[s] and the officers have been found to have acted unconstitutionally." Appellant's Br. 13. The ensuing argument states the legal test for clearly established law and then, after citing authority, contends that "[t]o the contrary, binding precedent suggests that uses of force well beyond those utilized by the Officers in this case still fall within the range of constitutionally permissible uses of force." Appellant's Br. 22. The brief additionally argues that no case has ever found a constitutional violation in similar circumstances. Appellant's Br. 22. At bottom, the officers provided "argumentation" supporting the claim that their actions did not violate clearly established rights. *United States v.*

*Huntington Nat'l Bank*, 574 F.3d 329, 331 (6th Cir. 2009).  That suffices.  *See Bldg. Serv. Loc. 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1398–99 (6th Cir. 1995).

We reverse.